UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Intellitech Corporation</u>

  v.

            Case No. 16-cv-009-SM

<u>The Institute of Electrical and</u>
<u>Electronics Engineers, et al.</u>

## <u>REPORT AND RECOMMENDATION</u>

The plaintiff, Intellitech Corporation, filed a Motion for Entry of Default (Doc. No. 12) pursuant to Fed. R. Civ. P. 55(a) against The Institute of Electrical and Electronics Engineers, Incorporated ("IEEE"), Kathryn Bennett ("Bennett"), and Yvette Ho Sang ("Ho Sang") (hereafter collectively referred to as the "defendants").  For the following reasons, the plaintiff's motion is DENIED.

## DISCUSSION

The parties apparently agree that if the defendants were properly served,[1] the deadline to answer or otherwise plead was March 10, 2016.  Rather than answer, the defendants explain that Bennett and Ho Sang referred the served complaint to their

---

[1] While the defendants have indicated they do not intend to contest service, in the context of the issues presented here, the parties disagree whether the defendants were properly served. For purposes of this Report and Recommendation, the court assumes arguendo that the defendants were properly served.

employer, IEEE, who in turn believed it had not yet been properly served and was awaiting proper service before responding. (Doc. No. 12 at 5). On Friday, March 25, 2016, two weeks after the answer deadline had passed, defendants retained defense counsel to represent them in this matter. That same day, defense counsel emailed the plaintiff's counsel to request an extension of time to answer and offered to accept service on behalf of IEEE. <u>Id.</u> Having received no response on the next business day, on Tuesday, March 29, 2016, defense counsel again contacted the plaintiff's counsel to reiterate his request. <u>Id.</u> at 5-6. Rather than respond to defense counsel's request, the plaintiff's counsel filed the instant motion for default later that day. <u>Id.</u>

In response, the defendants filed an objection (Doc. No. 13), arguing that "good cause" exists under Fed. R. Civ. P. 55(c) to permit them to answer or otherwise plead. The plaintiff then filed a motion to strike the defendants' objection (Doc. No. 14), arguing that default must first enter under Fed. R. Civ. P. 55(a) before the defendants may raise the "good cause" excuse contained in Fed. R. Civ. P. 55(c). (<u>Id.</u> at 1-2).

Thus, the threshold question is whether default must first enter under Fed. R. Civ. P. 55(a) before the court may consider "good cause" arguments under Fed. R. Civ. P. 55(c) and permit a case to proceed on the merits.  Case law, logic, and judicial economy contradict the plaintiff's position on this issue.

The court agrees with the defendants that "[c]ourts routinely hear 'good cause' arguments before default is entered," agrees that adopting the plaintiff's position would be "an exercise in empty formalism" and would merely postpone consideration of the "good cause" issue, and incorporates by reference the law cited by defendants on the issue. (Doc. No. 15 at 1-2).  See also Brown v. Wechsler, 135 F. Supp. 622, 624 (D.D.C. 1955) ("The Court will not go through formal entry of default in a case where it is apparent that in the exercise of its discretion the default will be set aside on motion."); United States ex. rel. Knight v. Reliant Hospice, Inc., 2011 WL 6130539 (D.S.C. 2011)(recommending denial of motion for entry of default because it was likely that defendant would prevail in showing good cause to set it aside).  Rather than do an act merely to undo the same, the court declines to enter default against the defendants and will instead consider whether "good

cause" exists to allow the defendants to appear and defend in this case.

In analyzing "good cause" under Fed. R. Civ. P. 55(c), the First Circuit Court of Appeals in Indigo America set forth a list of nonexhaustive factors for courts to consider:

> There is no mechanical formula for determining whether good cause exists and courts may consider a host of relevant factors. The three typically considered are (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense is presented. But that is not an exclusive list and courts may consider other relevant factors, including "'(4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; [and] (7) the timing of the motion (to set aside the default).'" Ultimately, the burden of demonstrating good cause lies with the party seeking to set aside the default.

Indigo America, Inc. v. Big Impressions, LLC, 597 F.3d 1, 3 (1st Cir. 2010) (citations omitted).  A "good cause" determination "lies within the sound discretion of the district court."  Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989).  The following from the First Circuit's Coon decision is particularly relevant to the instant dispute:

> [N]otwithstanding the deference due to this—as other—discretionary decisions, a reviewing tribunal should not stay its hand if the district court errs by reading "good cause" too grudgingly. . . . Allowing an entry of default to be set aside on a showing of reasonable justification is in keeping both with the philosophy that actions should ordinarily be resolved

> on their merits, and with the command of the Civil
> Rules themselves. <u>See</u> Fed. R. Civ. P. 1 (rules "shall
> be construed to secure the just ... determination of
> every action"). These policy considerations, we
> suggest, are at their zenith in the Rule 55(c) milieu.
> <u>Early in the case, as when a default has been entered
> but no judgment proven, a liberal approach is least
> likely to cause unfair prejudice to the nonmovant or
> to discommode the court's calendar.</u>

<u>Id.</u> at 76 (citations omitted) (emphasis added).  <u>See also</u> <u>KPS &
Associates, Inc. v. Designs by FMC, Inc.</u>, 318 F.3d 1, 12 (1st
Cir. 2003) ("countervailing considerations [to default] include
the goals of 'resol(ving) cases on the merits,' and avoiding
'harsh or unfair result[s].'") (citation omitted).  Finally,
"'Rule 55(c) determinations are case-specific' and 'must,
therefore, be made in a practical, commonsense manner, without
rigid adherence to, or undue reliance upon, a mechanical
formula.'"  <u>KPS & Associates</u>, 318 F.3d at 12 (citing <u>Gen.
Contracting & Trading v. Interpole, Inc.</u>, 899 F.2d 109, 112 (1st
Cir. 1990)).

Applying the <u>Indigo America</u> factors to this case--and
recognizing the preference to decide cases on the merits--the
court finds "good cause" to permit the defendants to answer and
defend in this case.  Each factor is addressed below.

## A. WILLFULNESS

"Courts tend to view a default as 'willful' where it shows contempt for the court's procedures or an effort to evade the court's authority." <u>Lucerne Farms v. Baling Techs., Inc.</u>, 208 F.R.D. 463, 466 (D. Me. 2002) (citing <u>Coon</u>, 867 F.2d at 76). In failing to timely answer, IEEE appears to have relied on its registered agent's rejection of service as improper, and Bennett and Ho Sang appear to have relied on IEEE to obtain counsel to represent them in this lawsuit. While this may have been careless, it cannot be fairly characterized as showing willful contempt for the court's procedures or an effort to evade the court's authority. <u>See</u> <u>Shepard Claims Serv. v. William Darrah & Assoc.</u>, 796 F.2d 190 (6th Cir. 1986) (finding abuse of discretion in district court's denial of motion to set aside default when defense counsel's conduct was "careless and inexcusable."). Upon being retained, counsel for the defendants immediately sought to rectify his clients' inaction, and to put this litigation on track, by seeking the assent of plantiff's counsel to extend the answer date and offering to accept service on behalf of IEEE. On these facts, the court finds that the defendants' failure to timely answer was not willful.

The plaintiff argues that the defendants willfully showed contempt for the court's authority by making a "strategic litigation decision to default, under the assumption that they had a personal jurisdiction defense and/or service of process defense." (Doc. No. 14-3, at 1).  The court agrees with the plaintiff that conduct can be deemed willful "when the default involve[s] deliberate conduct, such as when a party knows of the proceedings and could respond, but decides not to as part of a deliberate strategy."  10 James Wm. Moore et al., <u>Moore's Federal Practice</u>, § 55.70[2][b], at 55-86 (3d ed. 2012).  The court disagrees, however, that the facts here support a finding that the defendants failed to timely answer as part of a deliberate strategy.

The plaintiff's deliberate strategy argument is undercut by the fact that it was the defendants' counsel who twice reached out to him to accept service and to establish a date to answer or otherwise plead.  Rather than making a strategic decision to default, the record would support a finding that the defendants actually desired to appear and litigate this case.  In fact, notwithstanding the plaintiff's contention that defendants acted strategically, on this record it is the plaintiff whose behavior may best be described as strategic.  Additionally, the

plaintiff's deliberate strategy argument is further undermined
by the fact that a defendant can challenge both service and
personal jurisdiction pursuant to Fed. R. Civ. P. 12(b).  Thus,
it would be a dangerous and borderline absurd legal strategy to
forego filing a Rule 12(b) motion and instead suffer default—and
allow a binding monetary judgment to enter—in order to later
fight a motion to enforce judgment in another jurisdiction on
service or personal jurisdiction grounds.

### B. PREJUDICE TO PLAINTIFF

    Allowing the case to proceed on the merits would not
prejudice the plaintiff at this early phase of the case.  As
recognized in Coon, any potential prejudice is mitigated when a
request to set aside a default occurs early in the case.
Defense counsel's requests for assent to file an answer two (2)
weeks after the answer deadline, and his timely objection to the
plaintiff's motion for default, certainly occurred early in the
case.  In fact, while there is no factual basis to find
prejudice based on any delay caused by the failure to timely
answer, one could argue that this case would likely be further
along if the plaintiff had agreed to the defendants' proposal to
extend the deadline to answer.  Even if there can be some delay
attributed to the defendants' behavior, "in the context of a

8

Rule 55(c) motion, delay in and of itself does not constitute prejudice." KPS & Assocs. v. Designs by FMC, Inc., 318 F.3d 1, 15 (1st Cir. 2003). Thus, this factor weighs in the defendants' favor.

### C. MERITORIOUS DEFENSES

"Establishing the existence of a meritorious defense is not a particularly arduous task. A party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense." Indigo America, 597 F.3d at 4 (citation omitted). The defendants claim they have available defenses; the plaintiff disagrees. Especially at such an early stage of litigation, these are disagreements that ought to be resolved in the normal course, rather than in the context of a motion for default.

### D. EXPLANATION FOR DEFAULT AND GOOD FAITH OF THE PARTIES

In analyzing the defendants' "explanation for default" and the "good faith of the parties," the court adopts the same reasoning as provided on the question of whether the defendants' conduct was "willful."

**E.  AMOUNT OF MONEY AT ISSUE**

The amount of money involved in this litigation could be substantial.  "For each act of infringement, [17 U.S.C.] § 504(c) establishes an award range of $750 to $30,000 for non-willful infringements, and a range of $750 to $150,000 for willful infringements."  Sony BMG Music Entertainment v. Tenenbaum, 660 F.3d 487 (1st Cir. 2011).  Thus, this factor weighs in defendants' favor.

**F. TIMING OF MOTION TO SET ASIDE DEFAULT**

Because the defendants opposed the entry of default before it was entered, the "timing of the motion to set aside default" weighs in the defendants' favor.

**G. DECIDING CASES ON THE MERITS**

Finally, while not an Indigo America factor, it is consistent with the values outlined in Coon to allow the defendants to appear and answer in this case as it is "in keeping both with the philosophy that actions should ordinarily be resolved on their merits, and with the command of the Civil Rules themselves."  Coon, 867 F.2d at 76 (citation omitted).  This decision is also consistent with the First Circuit's

admonition in <u>KPS & Associates</u> to decide default questions in a "'practical, commonsense manner, without rigid adherence to, or undue reliance upon, a mechanical formula.'" <u>KPS & Assocs.</u>, 318 F.3d at 12 (citation omitted).

## CONCLUSION

The manner in which this case has progressed to date is both unfortunate and contrary to common practice in New Hampshire. This case could have been placed on track to progress in the normal course nearly two (2) months ago had the plaintiff's counsel simply assented to an extension to answer and accepted defense counsel's offer to accept service for IEEE. Now, more than 218 pages later, the case comes to the same place it could have been on March 25. To characterize this pleading exchange as unnecessary is an understatement.

For all of the foregoing reasons, the court recommends that the district judge issue the following order:

1. The Plaintiff's Motion for Default (Doc. No. 12) is DENIED.

2. The Plaintiff's Motion to Strike (Doc. No 14) is DENIED.

3. The Plaintiff's alternative motion to treat the Motion to Strike as an objection to the defendants' response to the

motion to strike (Doc. No. 14) is GRANTED.[2]  Accordingly,

document number 14-3 should be docketed as a separate

entry in the case docket.

4. Good cause exists to allow the defendants to answer or

otherwise plead on or before fourteen (14) days from the

date of this order.

Any objections to this Report and Recommendation must be

filed within fourteen (14) days of receipt of this notice.  See

Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the

specified time waives the right to appeal the district court's

order.  See Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15,

21-22 (1st Cir. 2014).

SO ORDERED.

/s/ Daniel J. Lynch
Daniel J. Lynch
United States Magistrate Judge

Date: May 19, 2016

cc:  Todd A. Sullivan, Esq.
     Jeffrey C. Spear, Esq.

---

[2] The court grants this alternative form of relief despite the fact it
violates the local rule's prohibition against making multiple requests for
relief in one motion.  See LR 7.1(a)(1).