UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Intellitech Corporation,
        Plaintiffs

        v.                                    Case No. 16-cv-9-SM
                                              Opinion No. 2017 DNH 035
The Institute of Electrical and
Electronics Engineers, Erik Jan
Marinissen, Kathryn Bennett,
and Yvette Ho Sang,
        Defendants

## O R D E R

Plaintiff, Intellitech Corporation, brings suit against
defendants The Institute of Electrical and Electronics Engineers
("IEEE"), Erik Jan Marinissen, Kathryn Bennett, and Yvette Ho
Sang for copyright infringement.  Marinissen, Bennett and Ho
Sang (collectively, the "Individual Defendants") have moved to
dismiss for lack of personal jurisdiction.  As set forth herein,
the Individual Defendants' motion to dismiss for lack of
personal jurisdiction is granted.

## Standard of Review

When a defendant challenges the court's personal
jurisdiction under Fed. R. Civ. P. 12(b)(2), the "plaintiff has
the burden of establishing that jurisdiction over the defendant
lies in the forum state."  Baskin-Robbins Franchising LLC v.

1

Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).  In a case such as this, where the court rules based on the "prima facie record," the pleadings, affidavits, and other written materials, in the absence of an evidentiary hearing, "the inquiry is whether [plaintiff] has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction."  A Corp. v. All American Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (quoting Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)).

In making a prima facie showing of jurisdiction, a plaintiff may not rely only on unsupported allegations in its pleadings.  A Corp., 812 F.3d at 58.  "Rather, [a plaintiff] must put forward 'evidence of specific facts' to demonstrate that jurisdiction exists."  Id. (quoting Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006)) (additional citations omitted)).  The court accepts plaintiff's "properly documented evidentiary proffers as true," and construes them in the light most favorable to plaintiff's jurisdictional claim. Id. (citing Phillips, 530 F.3d at 26) (additional citations omitted).  The court also considers uncontradicted facts put forth by the defendant, but does not "credit conclusory allegations or draw farfetched inferences."  Negrón-Torres v.

<u>Verizon Communications, Inc.</u>, 478 F.3d 19, 23 (1st Cir. 2007)
(citations and quotation marks omitted).

## **Background**

The relevant facts, construed in the light most favorable
to Intellitech, are as follows.  Intellitech is a New Hampshire
corporation with its principal place of business in Dover, New
Hampshire.  IEEE is a not-for-profit corporation, organized and
existing under the laws of New York State, with corporate
headquarters in New York, New York.  Defendant Yvette Ho Sang is
an IEEE Senior Manager, in IEEE's Risk and Licensing Department.
She lives and works in New Jersey.  Defendant Kathryn Bennett
also works for IEEE as a Senior Program Manager, and lives and
works in New Jersey.  Defendant Erik Jan Marinissen is a citizen
of the Netherlands and a resident of Belgium.  Marinissen is not
an employee of IEEE, but instead has volunteered his
professional services since 1999; he is currently active in the
organization in multiple capacities.  Marinissen serves as an
IEEE Fellow; he is on the editorial board of "IEEE Design &
Test" magazine; and is a member of the IEEE Standards
Association.  Neither Ho Sang, Bennett nor Marinissen has ever
travelled to New Hampshire for any business-related purpose.

IEEE promulgates technical standards relating to electrical
and electronic issues.  IEEE's standards are developed

3

collaboratively by working groups comprised of expert volunteers in the relevant field.  Industry volunteers participate in meetings that are generally conducted remotely by conference call, either telephonically or via conferencing software (like WebEx).  They draft and review position pieces, and create and review presentations made by other group members.  Group meetings are typically held weekly or biweekly.  Working group members do have access to IEEE's copyright policies.

IEEE owns and operates a dedicated, password-protected website for each working group.  Those websites are called "grouper sites."  The grouper sites act as a repository for the group's working materials, including drafts of standards, as well as other information working group participants might want other group members to review and consider.  Working group members also routinely distribute such materials by email within the working group. Once finalized, adopted standards are published by IEEE and made available to IEEE members and the general public.

Bennett has administrative oversight responsibilities for IEEE's working groups; she works with between 10 and 20 working groups at any one time.  In that capacity, she oversees and maintains IEEE's grouper sites.  Bennett is not responsible for drafting or contributing to the content of any standards

(drafts, revisions or final versions).  The record concerning Ho Sang's role with respect to the working groups is less clear. Intellitech alleges that Ho Sang oversees and instructs IEEE working groups regarding IEEE policies; defendants seemingly do not dispute that allegation, but Ho Sang does assert that she did not review any of the draft standards or working materials at issue in this suit.

Beginning in late 2013, Intellitech CEO Christopher Clark participated in working group P1838.  That working group was tasked with designing a new standard for "Test Access Architecture for Three-Dimensional Stacked Integrated Circuits." The P1838 grouper site, and all content submitted to the site, was hosted on a server located in New Jersey, with backup replication in Arizona for disaster recovery purposes.  Bennett had administrative oversight responsibilities for the P1838 working group.

The P1838 working group was comprised of over 50 people from several different states and nine foreign countries.  These individuals were divided into subgroups called "tiger teams." Each tiger team met weekly, and the entire P1838 working group met biweekly.  Meetings were held via conference call, most often via WebEx.  Marinissen chaired the P1838 working group,

and, in that capacity, participated as a member of all tiger
teams.

Mr. Clark was a member of Tiger Team 1, along with 13 other
volunteers, including at least one other New Hampshire resident.
Clark served as the scribe for Tiger Team 1, and, beginning in
July 2014, served as its chair.  Clark developed Intellitech's
position piece on how serial access and pipeline registers
should be managed by a 3D standard, which was entitled "Clause
for a Pipeline" (the "Work").[1]  Clark regularly presented the
Work to Tiger Team 1.

As Tiger Team 1 discussions proceeded, Clark refined the
Work, accepting some feedback from group members, but rejecting
other feedback.  Clark created 20 different iterations of the
Work over time, presenting from New Hampshire each week and
explaining the rationale for Intellitech's position.  When Clark
shared an iteration of the Work with the Tiger Team on the
grouper site or by email, he sent the document in a secure Adobe
Acrobat format PDF file that contained an "Intellitech"
watermark.  The file could not be edited by group members.

---

[1]     "Clause for pipeline v.20" was registered with the United
States Copyright Office on October 24, 2014.

On April 14, 2014, Marinissen emailed Clark, requesting a
Microsoft Word version of the Work, so that he could make his
suggested edits directly on the document.  Clark emailed
Marinissen a Microsoft Word version of the Work.  Marinissen
subsequently made suggested edits, changed the watermark from
"Intellitech" to "IEEE," and circulated his edited version of
the Work (still in Microsoft Word format) to Tiger Team 1 group
members.

Clark objected immediately to Marinissen's actions.  He
halted Tiger Team 1 meetings until the copyright issue was
resolved.  On September 2, 2014, Clark wrote a letter to IEEE's
General Counsel and Chief Compliance Officer, complaining of
Marinissen's actions and asserting Intellitech's position that
those actions constituted infringement of Intellitech's
copyright in the Work.  On September 11, 2014, when Marinissen
attempted to schedule a Tiger Team 1 meeting, Bennett emailed
the team, indicating that the team would not meet until the
copyright issue was addressed by IEEE.

In early October of 2014, Clark again wrote to IEEE's
General Counsel and Chief Compliance Officer, demanding that
IEEE remove all copies of Intellitech's Work from its servers.
Counsel for IEEE responded to Clark's letter on November 14,
2014, expressing IEEE's position that Clark and/or Intellitech

did not own a copyright in the piece, but agreeing nonetheless
to remove it from the P1838 website and all other IEEE websites.
Clark personally verified that all copies of the document were
removed from the IEEE servers, and Intellitech took no further
action.  Tiger Team 1 was formally disbanded in December of
2014.

In February of 2015, the P1838 working group held a WebEx
meeting in which Bennett and Ho Sang participated from their
offices in New Jersey.  During the meeting, Bennett and Ho Sang
explained IEEE's general copyright policies to the working
group.  Intellitech's Work was not discussed during that
meeting.

Months later, a new P1838 working group, called Tiger Team
4, was formed.  Tiger Team 4 included two New Hampshire
residents, Brian Turmelle and Craig Stephan, both of whom are
Intellitech employees.  At a Tiger Team 4 meeting in December of
2015, Marinissen and another group member presented a draft
document entitled "TT4_Rules."  The TT4_Rules document bore a
notation indicating "Copyright© <year> IEEE," but purportedly
contained material copied directly from Intellitech's "Clause
for a Pipeline" work.  The TT4_Rules document was uploaded to
the IEEE P1838 grouper site, and emailed to Tiger Team 4 team
members, including Turmelle and Stephan, who received the emails

in New Hampshire.  Bennett also received an emailed copy of the
TT4_Rules document.

Intellitech contends that IEEE's preparation, distribution
and display of the derivative work was done under the
"administrative oversight" of Bennett, and with Marinissen
acting as chair of the P1838 working group.  Based on the
foregoing, Intellitech asserts a claim for copyright
infringement against IEEE, Marinissen, Bennett and Ho Sang.

**Discussion**

The Individual Defendants argue that Intellitech cannot
show that they are subject to personal jurisdiction in New
Hampshire.  First, they argue, Intellitech has not alleged
specific facts from which it could be found that Bennett or Ho
Sang infringed the copyright, in New Hampshire or elsewhere.
Second, defendants argue, Intellitech cannot satisfy the
requisite jurisdictional test with respect to any Individual
Defendant, since the only New Hampshire-related fact in the case
is Intellitech's own presence here.  Intellitech disagrees.

1.   **Governing Law**

Because the claim arises under federal law, the court's
inquiry into whether it may exercise personal jurisdiction over
the Individual Defendants is distinct from the inquiry
applicable in diversity cases.  "In a federal question case,
'the constitutional limits of the court's personal jurisdiction
are fixed . . . not by the Fourteenth Amendment but by the Due
Process Clause of the Fifth Amendment." Battle Foam, LLC v.
Wade, No. 20-cv-116-SM, 2010 WL 2629559, at *2 (D.N.H. June 29,
2010) (quoting United Elec. Workers v. 183 Pleasant St. Corp.,
960 F.2d 1080, 1085 (1st Cir. 1992).

> This distinction is significant "because under the
> Fifth Amendment, a plaintiff need only show that the
> defendant has adequate contacts with the United States
> as a whole, rather than with a particular state.
> Importantly, however, "the plaintiff must still ground
> its service of process in a federal statute or civil
> rule."

Id. (quoting United States v. Swiss Am. Bank, Ltd., 274 F.3d
610, 618 (1st Cir. 2001)).  Thus, Intellitech must demonstrate
either: (1) that a federal statute invoked in its complaint
authorizes nation-wide service of process; or (2) that it served
the defendants with a copy of its complaint in a way that
comports with the requirements of Rule 4(k)(1)(A) of the Federal
Rules of Civil Procedure.  Id.

Because Intellitech does not identify a federal statute that authorizes national service of process upon the Individual Defendants, it must demonstrate that these defendants were served in accordance with Rule 4(k)(1)(A), which requires service in a manner consistent with New Hampshire's long-arm statute. The New Hampshire long-arm statute's reach is coextensive with the Fourteenth Amendment. R&R Auction Company, LLC v. Johnson, No. 15-cv-199-PB, 2016 WL 845313 (D.N.H. Mar. 2, 2016) (citations omitted). Thus, the court must determine whether the exercise of personal jurisdiction over the Individual Defendants comports with federal constitutional guarantees of due process. Battle Foam, 2010 WL 2629559, at *2.

"The Due Process Clause of the Fourteenth Amendment requires that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Baskin-Robbins, 825 F.3d at 35 (quoting Intl. Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). "This due process test is flexible and fact-specific, 'written more in shades of grey than in black and white.'" Id. (quoting Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999)).

Intellitech asserts that specific jurisdiction over the individual defendants exists in this case.  "Specific jurisdiction allows a court to hear a particular case as long as 'that case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum.'"  Baskin-Robbins, 825 F.3d at 25 (citing Phillips Exeter, 196 F.3d at 288).  "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."  Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014).

As the Supreme Court recently emphasized, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  Walden, 134 S. Ct at 1122.  "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."  Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985)).

> To be sure, a defendant's contacts with the forum
> State may be intertwined with his transactions or
> interactions with the plaintiff or other parties.  But
> a defendant's relationship with a plaintiff or third
> party, standing alone, is an insufficient basis for
> jurisdiction.  .  .  .  Due process requires that a
> defendant be haled into court in a forum State based

> on his own affiliation with the State, not based on
> the 'random, fortuitous, or attenuated' contacts he
> makes by interacting with other persons affiliated
> with the State.

Id. at 1123 (quoting Burger King, 471 U.S. at 475) (internal

citations omitted).

Our court of appeals has established a tripartite inquiry

for assessing the existence of specific jurisdiction.  Id.

> First, the claim underlying the litigation must
> directly arise out of, or relate to, the defendant's
> forum-state activities.  Second, the defendant's in-
> state contacts must represent a purposeful availment
> of the privilege of conducting activities in the forum
> state, thereby invoking the benefits and protections
> of that state's laws and making the defendant's
> involuntary presence before the state's courts
> foreseeable.  Third, the exercise of jurisdiction must
> . . . be reasonable.

Copia Communications, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st

Cir. 2016) (quoting Phillips v. Prairie Eye Ctr., 530 F.3d at

27) (additional citations omitted).  "All three of these

elements must be present for specific jurisdiction to attach."

Baskin-Robbins, 825 F.3d at 35 (citations omitted).

As set forth herein, Intellitech has failed to show that

the Individual Defendants purposefully availed themselves of the

privilege of conducting business in New Hampshire.  Therefore,

the court need not address the first and third prongs of the

specific jurisdiction inquiry.  Cf., Phillips Exeter, 196 F.3d at 288 ("An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction.").

### 2.   **Purposeful Availment**

"The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state."  Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995) (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)).  "A nonresident defendant purposefully avails itself of the forum state when the defendant's actions 'create a 'substantial connection' with the forum State.'  A 'substantial connection' can arise whenever the defendant deliberately directs its efforts toward the forum state."  C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 68 (1st Cir. 2014) (quoting Burger King, 471 U.S. at 475-476) (additional quotations omitted).  Our court of appeals has "observed that the cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability."  Sawtelle, 70 F.3d at 1391 (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994)).  A defendant's forum State "contacts must be voluntary and not based on the unilateral actions of

another party." <u>Adelson v. Hananel</u>, 510 F.3d 43, 50 (1st Cir. 2007).  "And, the defendant's contacts must be such that he could 'reasonably anticipate being haled into court there.'" <u>Id</u>. (quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)).

Intellitech's briefing is not entirely clear, but it appears that it has identified the following forum State "contacts" by the Individual Defendants: Marinissen received an emailed copy of the Work from Clark in New Hampshire. Marinissen emailed a derivative of the Work to the members of the Tiger Team 1 working group, including at least one New Hampshire resident (in addition to Clark).  Marinissen emailed a derivative of the Work a second time to members of Tiger Team 4, including at least two New Hampshire residents, and uploaded that derivative to the IEEE website, where it could be accessed by members of the P1838 working group, including New Hampshire group members.  Finally, because Intellitech is located in New Hampshire, the copyright infringement occurred in New Hampshire, and Intellitech suffered damage in New Hampshire when its copyright was infringed.

Intellitech relies on <u>Northern Laminate Sales, Inc. v. Davis</u>, 403 F.3d 14, 24 (1st Cir. 2005), for the proposition that a party commits a tortious act within the state when the injury

occurs in New Hampshire, even if the injury is a result of acts

outside the state.  Because Intellitech is located in New

Hampshire, it argues, the infringement injury occurred in New

Hampshire; therefore, each of the Individual Defendants

committed a tortious act in New Hampshire.[2]  Plaintiff further

---

[2]   Intellitech also argues that "the copyright infringement
here at issue inarguably occurred in New Hampshire" (pl.'s
surreply to defs.' motion to dismiss at 1), but cites no case
law in support of that argument.  Instead, Intellitech relies
upon the declaration of New Hampshire resident and Intellitech
employee, Brian Turmelle, in which Turmelle states that on
December 14, 2015, he, along with several other members of Tiger
Team 4 (including Marinissen), received an emailed copy of the
purported derivative work in New Hampshire.

Turmelle's receipt of an emailed copy of the derivative
work in New Hampshire does not establish that the purported
infringement occurred in New Hampshire.  Indeed, if
Intellitech's argument were correct, that would mean that the
infringement occurred in every state where a Tiger Team 4 team
member resides.  And, under Intellitech's argument, defendants
would therefore be subject to the personal jurisdiction of the
courts in every one of those states.  Such a result would fall
far short of traditional notions of fair play and substantial
justice.  See Int'l Shoe, Co., 326 U.S. at 316 (defendant must
have minimum contacts with the forum State such that maintenance
of the suit does not "offend traditional notions of fair play
and substantial justice") (citations and internal quotations
omitted).

Moreover, the law is unsettled with respect to the situs of
infringement.  As a leading treatise on copyright explains:

Because copyright is intangible, it cannot be said
that a copyrighted work has a situs.  Long ago, in a
case involving unpaid dividends, the Supreme Court
observed that "[s]itus of an intangible is fictional,"
and that as a result, the focus tends to shift to
"control over the parties [which] can make effective
rights created by the chose in action … ." [quoting
Standard Oil Co. v. State of N.J. by Parsons, 341 U.S.

relies upon <u>Berklee College of Music, Inc. v. Music Industry Educators, Inc.</u>, 733 F. Supp. 2d 204 (D. Mass. 2010), arguing that, because Clark sent the Work from New Hampshire, and the derivative work was subsequently transmitted back to New Hampshire by Marinissen, the enforcement of personal jurisdiction is foreseeable because the "infringing acts were almost certain to cause tortious injury in the forum jurisdiction."  Pl.'s Mem. in Support of Opposition to Motion to Dismiss at 8.

---

428, 439-440 (1951).]  Subsequently, however, the Court cautioned that the fictional presence accorded to intangible property "can have no jurisdictional significance."  [quoting <u>Rush v. Savchuk</u>, 444 U.S. 320, 328-330 (1980).]  Nevertheless, some courts fall prey to the temptation to find jurisdiction based on the location of the copyrighted work, seen in <u>Berklee College of Music, Inc. v. Music Industry Educators, Inc</u>. [733 F. Supp. 2d 204 (D. Mass. 2010)] where the Massachusetts court exercised personal jurisdiction over a Florida corporation because it was alleged to have copied material from a website "locate[d]" in Massachusetts and because that material became available for transmission back in to Massachusetts. This last ground is extraneous because if followed it would mean all websites are subject to jurisdiction in all states.  The first ground is equally problematic because it means that the plaintiff's forum is appropriate regardless of where defendant's conduct is alleged to have occurred and regardless of where defendant is located.

5 Patry on Copyright § 17:158 (2016).

Intellitech's reliance on Northern Laminate in support of its purposeful availment argument is problematic for two reasons.  First, as defendants point out, the language upon which Intellitech relies constitutes our Court of Appeal's characterization of the reach of New Hampshire's long-arm statute.  Northern Laminate, 403 F. 3d at 24.  As the Court of Appeals explained in Sawtelle, "a plaintiff seeking to establish jurisdiction over a foreign defendant must satisfy the demands not only of state law but also of the federal Constitution." 70 F.3d 1381, 1388.  Because New Hampshire's long-arm statute is "coextensive with the outer limits of due process, the court's attention properly turns to the issue of whether the exercise of personal jurisdiction comports with federal constitutional standards."  Id.

Second, Northern Laminate is factually distinguishable.  As the court has previously stated, while the defendant in Northern Laminate was never physically present in New Hampshire, "he had considerable contact with New Hampshire."  NeoDevices, Inc. v. NeoMed, Inc., No. 08-cv-375-SM, 2009 WL 689881, at *4 (D.N.H. Mar. 12, 2009) (describing contacts).  As discussed herein, the Individual Defendants' contacts with New Hampshire fall far short of that level.

Finally, and critically, _Walden_ makes clear that
Intellitech's emphasis on the situs of the purported injury is
misplaced.  In _Walden_, the Supreme Court stated:

> mere injury to a forum resident is not a sufficient
> connection to the forum.  Regardless of where a
> plaintiff lives or works, an injury is jurisdictionally
> relevant only insofar as it shows that the defendant has
> formed a contact with the forum State.  The proper
> question is not where the plaintiff experienced a
> particular injury or effect but whether the defendant's
> conduct connects him to the forum in a meaningful way.

134 S. Ct. at 1125; _see also_ _A Corp._, 812 F.3d at 60
("[Plaintiff] argues, in essence, that [defendant] purposefully
availed itself of the forum because its alleged infringement
targeted a Massachusetts company.  But, '[t]he proper question
is not where the plaintiff experienced a particular injury or
effect but whether the defendant's conduct connects him to the
forum in a meaningful way.'") (quoting _Walden_, 134 S. Ct. at
1125); 5 Patry on Copyright § 17:156 (2016) ("_Walden_ marks the
death knell of those cases holding that where 'intentional'
copyright infringement is alleged – defined very liberally as
'an external manifestation of the actor's intent to perform an
actual physical act in the real work' – plaintiff's mere
presence in the forum constitutes harm sufficient to establish
specific jurisdiction. . . . to rule otherwise would essentially
be to hold that a copyright holder can always sue wherever it

happens to be located.") (internal quotations omitted).  Because

"mere injury to a forum resident is not a sufficient connection

to the forum," Walden, 134 S. Ct. at 1125, that fact is not

determinative of the jurisdictional analysis.[3]  See also DCM

Sys., Inc. v. Tech. Trades Inst., Inc., No. 14-CV-10243-IT, 2014

WL 4804743, at *4 (D. Mass. Sept. 25, 2014) ("the mere fact that

[defendant's] alleged infringement caused injury to a company

located in Massachusetts is insufficient, by itself, to satisfy

the purposeful availment prong for any of [plaintiff's] causes

of action.") (citations omitted).

     With the foregoing in mind, the court moves to

consider the Individual Defendants' contacts with the forum

State, and whether those contacts are sufficient to

establish that the Individual Defendants "engaged in any

purposeful activity related to the forum that would make

---

[3]     The parties dispute the role that Calder v. Jones, 465 U.S.
783 (1984), should play in the analysis.  As the court
previously stated in Sturm, Ruger & Co. v. Armscor Precision
Int'l, Inc., No. 14-CV-194-SM, 2015 WL 4563005, at *9 (D.N.H.
July 28, 2015), Walden did not "gut" the "effects" test set
forth by the Supreme Court in Calder v. Jones, 465 U.S. 783
(1984). However, as our Court of Appeals has noted, Calder does
not "stand for the broad proposition that a foreign act with
foreseeable effects in the forum state always gives rise to
specific jurisdiction."  United States v. Swiss Am. Bank, Ltd.,
274 F.3d 610, 623 (1st Cir. 2001) (citing Bancroft & Masters,
Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir.
2000)).

the exercise of jurisdiction fair, just or reasonable."
<u>Sawtelle</u>, 70 F.3d at 1391.

**Bennett and Ho Sang.** With respect to Bennett and Ho Sang,
plaintiff does not identify any purposeful activity by either
defendant directed at New Hampshire. Indeed, plaintiff
identifies no contacts whatsoever between Bennett or Ho Sang and
the forum State.

Rather than pointing to evidence that would support a
finding that either Ho Sang or Bennett purposefully availed
themselves of the benefits and protections of New Hampshire law,
plaintiff instead seems to suggest that because Bennett and Ho
Sang are directly or vicariously liable for copyright
infringement (based on their purported supervision and
facilitation of the allegedly infringing activities), that ought
to suffice for jurisdictional purposes. In other words,
Intellitech's argument seems to be that, because Ho Sang and
Bennett committed copyright infringement and knew that
Intellitech was located in New Hampshire, they have purposefully
availed themselves of the forum because it was foreseeable that
their infringement would cause injury to Intellitech in New
Hampshire. As discussed above, that argument falls short.

Ho Sang, Intellitech argues, "was involved with the copyright policies applicable to the P1838 working group." Pl.'s Mem. in Support of Opp. to Motion to Dismiss at 9. Bennett purportedly "exercised 'administrative oversight'" over the P1838 group when the derivative work was copied to IEEE's grouper sites, and emailed to P1838 group members. Id. Such conduct, however, does not reflect a voluntary decision by either Ho Sang or Bennett to avail themselves of the privilege of doing business in the forum State. Nor does such conduct make it foreseeable that Ho Sang or Bennett would be haled into a New Hampshire court. Rather, the facts alleged make clear that the only connection between Bennett or Ho Sang and the forum State is the plaintiff, Intellitech. Walden instructs that that is insufficient to vest specific jurisdiction over either defendant. Walden, 135 S. Ct. at 1226 ("the plaintiff cannot be the only link between the defendant and the forum."); see also C.W. Downer & Co., 771 F.3d at 67 ("the purposeful availment inquiry is focused on contacts between the defendant and the forum state, not between the defendant and the plaintiff.") (citations omitted).

Intellitech's argument relating to Ho Sang and Bennett's purported vicarious copyright infringement fares no better. See Rosenthal v. MPC Computers, LLC, 493 F. Supp. 2d 182, 194

(D. Mass. 2007) ("caselaw appears to reject the essence of
Plaintiff's . . . argument that personal jurisdiction . . . can
be established simply by a sufficient pleading of vicarious
copyright infringement.")  "Although a vicarious theory may be a
basis for liability against [a defendant], it is not a basis for
asserting jurisdiction over him."  Id. at 193-94 (quoting Sefton
v. Jew, 201 F. Supp. 2d 730, 743 n.8 (W.D. Tex. 2001)).

Sefton v. Jew, 201 F. Supp. 2d 730 (W.D. Tex. 2001), is
instructive.  Sefton involved an intellectual property dispute
between two website owners "who offer[ed] sexually-oriented
photographs on their websites to subscribers for monthly fees."
Id. at 736-37.  Claiming that defendants had published his
copyrighted photographic images and other property on their
website without his permission, plaintiffs filed suit against
the company and its CEO.  Defendants moved to dismiss, and, in
part, argued that the court lacked personal jurisdiction over
its CEO.  Plaintiffs responded, inter alia, that: (1) their
claims arose out of the forum because the financial harm that
defendants inflicted arose in Texas; and (2) the CEO was subject
to personal jurisdiction because he had received letters
pertaining to the purported copyright infringement, and had
failed to remove copyrighted material from his website.  Id. at
742.

The court observed that the plaintiff had failed to allege any wrongful act that the CEO had personally committed against plaintiff in the forum State that would justify the exercise of specific jurisdiction over him.  With respect to the letters pertaining to copyright infringement, and the CEO's failure to remove copyrighted material from the website, the court noted that "Plaintiff does not allege that [the CEO] committed those actions in or directed to his forum."  Id. at 742.  The court concluded that plaintiff had not met his burden of showing that the CEO, in his individual capacity, was subject to the specific jurisdiction of the court.

So too, here.  Because plaintiff points to no evidence suggesting that Ho Sang or Bennett purposefully availed themselves of conducting business in New Hampshire, plaintiff has failed to make a showing that the court may exercise personal jurisdiction over Ho Sang or Bennett.

**Marinissen.**  Whether plaintiff has effectively pointed to forum-related actions Marinissen took that are associated with its claims is a closer call.  Intellitech's copyright infringement claim is based largely on Marinissen's purported preparation and emailing of a derivative of the Work to members of the P1838 working group (twice), including group members who resided in New Hampshire, and Marinissen's uploading of the

derivative work to the IEEE grouper sites, where it could be viewed by working group members, including those who resided in New Hampshire.  Intellitech does not allege that Marinissen took any of these actions in the forum State.  Instead, Intellitech argues that Marinissen's actions targeted the forum State and its residents.  In support, Intellitech points to the fact that a few New Hampshire members of the P1838 working group received Marinissen's email containing the derivative work, and were able to access the P1838 grouper site, where the derivative work was posted.

Such contacts, however, constitute the sort of "random, isolated, or fortuitous" contacts that the Supreme Court has found inadequate to give rise to personal jurisdiction.  There is nothing in the record that suggests that those limited contacts with a few New Hampshire residents were the result of any purposeful efforts by Marinissen to specifically target New Hampshire residents.  Of course, only a very few New Hampshire residents received Marinissen's emails, and only a few had to access the password-protected P1838 grouper site.  Cf., A Corp., 812 F.3d at 61 ("certainly, the mere availability of a passive website, even one containing an allegedly-infringed trademark owned by a forum company, cannot, standing alone, subject a defendant to personal jurisdiction in the forum.").  Moreover,

it is not clear from the record whether Marinissen even knew that Intellitech was located in New Hampshire.  See Document No. 20-1 at ¶ 7 (Decl. of Marinissen, stating "I knew that Intellitech must be located on the East coast of the United States because of the times Mr. Clark mentioned during conference calls, but I didn't know in which state exactly until this lawsuit began"); but see Document No. 14-13 (Mar. 1, 2015, email message from Clark to Marinissen, with New Hampshire address of Intellitech plainly visible).

The limited contacts set forth by Intellitech are insufficient to warrant the conclusion that Marinissen purposefully availed himself of the privilege of conducting business in this forum, or that he should have reasonably foreseen the possibility that he would be haled into court here. See, e.g., Burger King, 471 U.S. at 475 ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.") (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

For all these reasons, Intellitech has not set forth facts adequate to satisfy the purposeful availment prong of the

personal jurisdictional analysis with respect to the Individual Defendants.

## Conclusion

Because plaintiff fails to satisfy the purposeful availment test, the court lacks specific personal jurisdiction over the Individual Defendants.  Therefore, the Individual Defendants' motion to dismiss (document no. 20) is granted.


**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 27, 2017

cc:  Todd A. Sullivan, Esq.
     Jeffrey C. Spear, Esq.